**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nima Ghadimi, | No. CV-25-03106-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Arizona Bank & Trust, et al., | |
| Defendants. | |

Plaintiff Nima Ghadimi believes defendants Arizona Bank & Trust ("AZBT"), Cadles Capital of West Virginia, LLC, and James E. Cross engaged in "a coordinated scheme" to destroy Ghadimi's healthcare businesses. (Doc. 12 at 1.) Ghadimi's complaint alleges a variety of state and federal claims against all three defendants. Ghadimi seeks emergency injunctive relief to prevent AZBT and Cadles from receiving funds from a foreclosure sale of real property he owns in California. The request for injunctive relief is denied, Ghadimi's request to correct an alleged clerical error is granted, and Ghadimi is warned that he is expected to comply with the same rules and procedures as all other litigants.

**I.      Factual Background**

Accepting the very limited facts Ghadimi has supplied as accurate, before 2022 he owned 100% of three healthcare companies. Those companies "incurred business debts to AZBT totaling approximately $5 million." (Doc. 3 at 2.) Sometime in 2022, "AZBT sold these business loans to [Cadles]." (Doc. 3 at 2.) Ghadimi stresses that in purchasing the

1  loans Cadles did not "acquire any personal guarantees" from Ghadimi. (Doc. 3 at 2.)
2  Despite lacking personal guarantees, in 2022 Cadles sued Ghadimi in state court seeking
3  to recover on the loans. (Doc. 3 at 2.) Also in 2022, unauthorized bankruptcy petitions were
4  filed on behalf of the healthcare companies and defendant James E. Cross was appointed
5  as the bankruptcy trustee. (Doc. 12 at 7.) The bankruptcy proceedings eventually led to an
6  appeal that is currently pending before a different judge. *See* No. CV-24-1992-PHX-GMS.

Ghadimi's potentially-overlapping litigation is very difficult to follow, and it is possible the present suit is an impermissible collateral attack on other proceedings or barred by res judicata. But solely for purposes of resolving the request for injunctive relief and addressing other preliminary matters, the court assumes the court has jurisdiction to hear the claims Ghadimi wishes to pursue in this suit.

The crucial facts for resolving Ghadimi's request for injunctive relief involve property he owns in California. According to Ghadimi, that property is "valued at $7-10 million" and is scheduled to be sold at a foreclosure sale on October 29, 2025. (Doc. 2 at 2.) "Chase Bank holds the senior deed of trust [on that property] for approximately $3.5 million, which will be satisfied from the sale proceeds." (Doc. 3 at 2.) "[A]pproximately $3.5 million to $6.5 million will remain after Chase Bank is paid." (Doc. 3 at 2.) Ghadimi believes AZBT and Cadles claim they are entitled to those surplus funds from the property sale to satisfy the business loans issued to his healthcare businesses.

**II.     Procedural Background**

At approximately 11:30 a.m. on August 27, 2025, Ghadimi filed his complaint and an emergency motion for temporary restraining order. The motion sought to prevent defendants AZBT and Cadles "from claiming, receiving, or interfering with any surplus proceeds from the foreclosure sale" of Ghadimi's property in California. (Doc. 2 at 1.) Ghadimi indicated he was not attempting to challenge "Chase Bank's foreclosure" nor was he "seek[ing] to delay the sale." (Doc. 2 at 9.)

Ghadimi's motion for emergency relief claimed the sale was scheduled for 10:00 a.m. on August 27, 2025, *i.e.* approximately 90 minutes before Ghadimi filed his complaint

and motion. The court immediately ordered Ghadimi to clarify whether his request for injunctive relief was moot and whether his claims in this suit should be heard in the related bankruptcy appeal. (Doc. 7.) Ghadimi responded the foreclosure sale had been rescheduled for October 29 so his request for injunctive relief was not moot. (Doc. 10 at 2.) Ghadimi also argued the claims in this suit were "distinct from the bankruptcy appeal." (Doc. 10 at 2.)

Before the court took additional action, Ghadimi filed another complaint using the pro se form. (Doc. 11.) That form complaint referenced a "separately filed Formal Verified Complaint" that allegedly was "filed contemporaneously herewith." (Doc. 11 at 4.) No such complaint was filed at the same time as the form, but the following day Ghadimi filed what he identified as a "Corrected Complaint." (Doc. 12 at 1.) The corrections were to change the names of the defendants. (Doc. 12 at 1.) The court then issued an order stating Ghadimi's response regarding the rescheduling of the foreclosure sale and the differences between this suit and his bankruptcy appeal meant the court would "retain jurisdiction over this matter" and converted the motion for temporary restraining order to a motion for preliminary injunction. (Doc. 13 at 2.) Defendants were ordered to respond to the motion for preliminary injunction no later than October 15, and Ghadimi's reply was due October 20. The court set oral argument for October 27. (Doc. 13 at 3.)

On September 11, 2025, Ghadimi filed another copy of the pro se complaint form. (Doc. 17.) That document included Ghadimi's and defendants' contact information but did not include any substantive allegations. (Doc. 17.) It was docketed as the "Second Amended Complaint." (Doc. 17.) On September 23, Ghadimi filed a "Motion to Correct Clerical Error in Docket Entry." (Doc. 23.) That motion argues the document filed on September 11 was not intended to be an amended complaint but was filed to satisfy "an administrative requirement when submitting summons forms in person." (Doc. 23 at 2.) Ghadimi argued the operative complaint should remain Doc. 12, but even that document should not be treated as a formal amended complaint because it "made only name corrections." (Doc. 23 at 5.) This type of minor change, according to Ghadimi, does not

qualify as an "amendment."

On October 1, 2025, counsel for AZBT contacted Ghadimi to discuss a motion to dismiss that AZBT expected to file. AZBT explained to Ghadimi that it planned to argue some of his claims were barred by the applicable statutes of limitations. Ghadimi disagreed and on October 3, 2025, filed a motion to amend his complaint to include additional allegations regarding timeliness to foreclose possible statute-of-limitations arguments. (Doc. 26.) Later that day AZBT filed its motion to dismiss. (Doc. 27.) Neither the motion to amend nor the motion to dismiss are fully briefed. (Doc. 23 at 5–6.)

### III. Motion for Preliminary Injunction

The motion for preliminary injunction is not yet briefed but there is no need to await a response because Ghadimi has not established a sufficient likelihood he will suffer irreparable injury. The motion is denied.

A court must analyze a request for a preliminary injunction under two slightly-different tests. The first test requires the court evaluate if there is a likelihood of success on the merits, if there is a likelihood of irreparable harm, whether the balance of equities tips in plaintiff's favor, and whether an injunction would be in the public interest. *Winter v. Natural Resources Defense, Inc.*, 555 U.S. 7, 20 (2009). The second test requires a court evaluate if "serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011). If so, the plaintiff must also show "there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135. For present purposes, the crucial element lacking stems from the nature of Ghadimi's feared injury.

Ghadimi requests immediate injunctive relief to prevent the "foreclosure trustee" from distributing to AZBT or Cadles the surplus funds from the sale of his California property. (Doc. 3 at 8.) Ghadimi argues distribution to AZBT or Cadles would be a "wrongful seizure of funds" and that distribution "while [he] remains homeless from defendants' earlier destruction of his businesses constitutes irreparable harm." (Doc. 2 at 8.) Given that Ghadimi is not seeking immediate possession of the funds, it is not clear

what connection there is between distribution of the funds to AZBT or Cadles and his homelessness. Ghadimi also argues he faces irreparable harm in that distributing the surplus funds will mean he "faces the prospect of chasing money across state lines." (Doc. 2 at 8.) Ghadimi claims—without providing any authority—that "[c]ourts consistently hold that once funds are distributed across multiple jurisdictions, they cannot be clawed back." (Doc. 2 at 8.)

In general, "economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award." *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). There is a limited exception that allows for injunctive relief to avoid economic injury when a party shows "a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if [early injunctive] relief is not granted." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009). For example, early injunctive relief preventing distribution of funds might be appropriate upon a showing of "impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment." *In re Est. of Ferdinand Marcos, Hum. Rts. Litig.*, 25 F.3d 1467, 1480 (9th Cir. 1994). Ghadimi provides no such evidence regarding AZBT or Cadles.

Instead of evidence establishing AZBT or Cadles are on the verge of insolvency or likely to dissipate the funds, Ghadimi merely argues it will be difficult to "chas[e] money across state lines." (Doc. 2 at 8.) Ghadimi appears to argue that once he prevails in the present suit he will be entitled to recover the surplus funds, and if those funds have been distributed to AZBT or Cadles, it will be difficult for him to collect them. Even accepting it "may theoretically be difficult to enforce a judgment" against AZBT or Cadles—a dubious proposition at this point—that possibility is not enough to establish irreparable harm. *Qualcomm Inc. v. Compal Elecs., Inc.*, 283 F. Supp. 3d 905, 923 (S.D. Cal. 2017). Ghadimi has not made a sufficient showing he will suffer irreparable harm involving the distribution of the surplus funds. The motion for preliminary injunction is denied.[1]

---

[1] An additional issue is that although Ghadimi appears to have sued the bankruptcy trustee, he has not sued the "foreclosure trustee" who will take possession of the surplus funds. It

- 5 -

### IV. Motion to Correct Clerical Error

Ghadimi filed his original complaint then filed what he claimed was a "corrected complaint." (Doc. 1, 12.) That second complaint changed one defendant from "Cadles Capital LLC" to "Cadles of West Virginia LLC." Changing a named defendant is a change sufficiently substantive such that the complaint filed on September 5, 2025, is deemed Ghadimi's amendment as of right. Fed. R. Civ. P. 15(a)(1). All amendments after that date require the opposing parties' written consent or the court's leave. Fed. R. Civ. P. 15(a)(2).

The document filed on September 11, 2025, that is currently identified on the docket as the Second Amended Complaint is not, in fact, a complaint. (Doc. 17.) Ghadimi claims he was required to file that document to obtain summonses. To prevent confusion, the court strikes that document, leaving Doc. 12 as the operative complaint.

### V. Improper Filings

Ghadimi is proceeding pro se but he still "must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012). This includes a requirement that he take significantly more care in filing documents than he has taken up to this point. For example, Ghadimi filed his complaint (Doc. 1), then a version of the complaint form containing almost no meaningful allegations (Doc. 11), then an amended complaint (Doc. 12), then another copy of the complaint form containing only contact information (Doc. 17). Two of those filings were improper and such filings could subject Ghadimi to sanctions. Fed. R. Civ. P. 11.

Ghadimi also filed a "Notice of Related Proceedings" intended "to ensure the Court has a complete understanding of the broader litigation context." (Doc. 32 at 1.) That notice appears to repeat many of the factual assertions and arguments Ghadimi made in other filings. There is no basis for Ghadimi's notice, and he must not file similar notices in the future.

In addition to those filings, Ghadimi may have already violated the rule of civil

---

is highly doubtful the court could issue an injunction against that non-party but Ghadimi's lack of irreparable injury means it is not necessary to reach that issue.

- 6 -

procedure requiring his legal arguments be "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law." Fed. R. Civ. P. 11(b)(3). When arguing "corrections" to a complaint do not qualify as an "amendment," Ghadimi included the following case citations:

> *See Contreras v. BlueCross Blue Shield of Ariz.*, No. CV-20-01915-PHX-JAT, 2021 WL 252719, at *2 (D. Ariz. Jan. 26, 2021)(distinguishing between corrections and amendments); *Williams v. Ariz. Dep't of Corr.*, No. CV-19-01834-PHX-GMS, 2020 WL 4016022, at *2 (D. Ariz. July 16, 2020) (permitting correction of party names without consuming amendment rights).

(Doc. 23 at 5-6.) Neither the case numbers nor the Westlaw citations actually return the cases Ghadimi identified.

It appears the incorrect citations may be the result of Ghadimi using artificial intelligence to draft his filings. *See United States v. Hayes*, 763 F. Supp. 3d 1054, 1065 (E.D. Cal. 2025) (discussing "markings of a hallucinated case"). But whether Ghadimi used artificial intelligence or simply imagined the cases himself, filing documents that contain such cases results in confusion and unnecessary work for opposing parties and the court. In the future, filing documents with fictitious cases will subject Ghadimi to sanctions under Rule 11. *See Novitzky v. Transunion LLC*, No. 2:23-CV-04229-SPG-MAR, 2024 WL 5424114, at *3 (C.D. Cal. Apr. 11, 2024) (filing "fabricated caselaw" may violate Rule 11).

Accordingly,

**IT IS ORDERED** the Motion for Preliminary Injunction (Doc. 2) is **DENIED**.

**IT IS FURTHER ORDERED** the Motion to Correct Clerical Error (Doc. 23) is **GRANTED IN PART**. The "Second Amended Complaint" at Doc. 17 is **STRICKEN**. The operative complaint is found at Doc. 12.

**IT IS FURTHER ORDERED** the briefing deadlines for the motion to amend (Doc. 26) and motion to dismiss (Doc. 27) remain in place.

**IT IS FURTHER ORDERED** the following policies and procedures replace those originally issued on September 9, 2025.

### Governing Rules

Both counsel and *pro se* litigants must abide by the Rules of Practice of the U.S. District Court for the District of Arizona ("Local Rules") and the Federal Rules of Civil Procedure.

### Disclosure Statements

Full compliance with Federal Rule of Civil Procedure 7.1 is required by plaintiff(s) and defendant(s). Rule 7.1(a)(1) requires any nongovernmental corporation to file a disclosure statement identifying "any parent corporation and any publicly held corporation owning 10% or more of its stock." Rule 7.1(a)(2) requires a party in an action where jurisdiction is based on diversity under 28 U.S.C. § 1332(a) to file a disclosure statement identifying the citizenship of "every individual or entity whose citizenship is attributed to that party." A Corporate Disclosure Statement form is available at https://www.azd.uscourts.gov/forms/disclosure-statement.

### Service Deadline

Service of the summons and complaint on each defendant located in the United States must occur within 90 days of filing the complaint. *See* Fed. R. Civ. P. 4(m). If service cannot occur within 90 days, a request for an extension may be filed *before* expiration of the 90-day period. Any such request must set forth the reason why service has not been accomplished and request a specific short additional period of time. If the court believes your reason constitutes "good cause," it will authorize a brief additional period to accomplish service.

Proof of service must be filed with the Clerk of Court, in the form of an affidavit, promptly after service has been made. *See* Fed. R. Civ. P. 4(l). It is important to comply with this requirement because absent proof of service, the court will have no way of knowing that the complaint has been served.

This order serves as an express warning that the court will dismiss this action, without further notice to plaintiff(s), with respect to any defendant that is not timely served. *See* Fed. R. Civ. P. 4(m).

**Forms of Papers**

The parties shall adhere to all of the requirements of Local Rule 7.1, including the requirement that text and footnotes shall be no smaller than 13 point. Citations supporting any textual proposition shall be included in the text, not in a footnote.

Notices of supplemental authority and responses to those notices are limited to 350 words excluding case captions and signature blocks.

**Paper Courtesy Copies**

Do not send paper courtesy copies of Federal Rule of Civil Procedure 7(a) pleadings, short procedural motions (*e.g.*, motions for extension of time), 26(f) reports, or stipulations. A paper courtesy copy of dispositive motions (or other lengthy motions that will be opposed) and any responses or replies thereto shall be either postmarked and mailed to the judge or hand-delivered to the judge's mailbox in the courthouse by the next business day after the electronic filing. Do not attempt to deliver documents to the judge's chambers. Courtesy copies should be double-sided and include the ECF-generated header at the top of each page. Courtesy copies of documents too large for stapling must be submitted in three-ring binders.

**Amending Pleadings**

Before filing a motion for leave to amend a pleading, the party that wishes to amend must seek the consent of the other parties in an attempt to file the amended pleading pursuant to Local Rule 15.1(b). If any party is unwilling to consent, the motion for leave to amend must indicate which party (or parties) will oppose the request. If a motion for leave to amend a pleading fails to so indicate, the motion will be denied without prejudice for failure to adhere to this order.

**Motions and Stipulations**

Every motion or stipulation, however mundane, must cite the rule(s) and/or law(s) that permit the court to grant the requested relief. Requests for extensions of time must include a brief explanation of why the extension is needed to help the court determine whether there is good cause. *See* Fed. R. Civ. P. 6(b)(1)(A).

To ensure timely case processing, a party moving for an extension of time, enlargement of page limitations, or leave to file a document under seal shall indicate in the motion whether the non-movant opposes the request and intends to file a written response. If such a motion does not so indicate, it may be denied for failure to comply with this order.

Motions and stipulations should be accompanied by proposed orders. A proposed order is not necessary for motions that will require a reasoned analysis from the court, or for stipulations requesting issuance of the court's standard protective order with no amendments. These proposed orders must not be on letterhead or contain any information identifying the party submitting the order, and they must set forth the relief requested rather than incorporating the motion or stipulation by reference. *See also* Local Rule 7.1(b)(3). Proposed orders must be emailed—in Microsoft Word format (*not* PDF)—to Lanham_Chambers@azd.uscourts.gov. The subject line of the email must include the case name, case number, the words "proposed order for [name of motion]," and an indication of whether the motion is opposed or unopposed if this is not otherwise apparent from the name of the motion.

## **Rule 12 Motions Are Discouraged**

Any motion under Federal Rule of Civil Procedure 12 is discouraged if the challenged defect in the pleading can be cured by filing an amended pleading. The court therefore requires that: (1) before filing a Rule 12(b)(6) motion to dismiss or a Rule 12(c) motion for judgment on the pleadings, the movant confer with the opposing party to determine whether such motion can be avoided; and (2) the movant attach a certificate of conferral, certifying that it notified the opposing party of the issues asserted in its motion and that the parties conferred but were unable to agree that the pleading was curable in any part by a permissible amendment offered by the pleading party. *See also* Local Rule 12.1(c). The requirement to meet and confer and attach a certificate of conferral applies in equal force to motions to dismiss amended complaints, notwithstanding earlier conferrals and certificates filed before the complaint was amended. Any motion lacking the required certification may be summarily stricken.

Multiple defendants represented by the same counsel may not file separate Rule 12 motions. Defendants represented by the same counsel who wish to file a Rule 12 motion must file a single joint motion that includes all arguments applicable to any defendant.

### **Protective Orders**

The court's standard protective order is available is available at www.azd.uscourts.gov under: Judges' Information → Orders, Forms and Procedures → Lanham, Krissa M. If the parties agree that discoverable materials should be kept confidential, they may file a stipulation requesting that the court issue its standard protective order. If the parties wish to propose additional provisions, they may request and stipulate to the additional proposed language, subject to the court's review. In that case, all language added to the standard order by the parties should be redlined into a Word document using "tracked changes," and the parties' Word document with the tracked changes must be emailed to chambers. The parties are reminded that the mere fact the parties have designated certain materials or information as confidential pursuant to an agreement or stipulation does not mean the court will automatically order that filings containing such information be placed under seal. *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016).

### **Motions to Seal**

Local Rule 5.6 governs sealing of court records in unsealed civil actions. Every motion to seal, including stipulations pursuant to Local Rule 5.6(d), must identify the legal standard applicable to the document at issue and explain why the material sought to be sealed meets that standard. The stringent "compelling reasons supported by specific factual findings" standard articulated in *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006), applies to motions and their attachments where the motion is "more than tangentially related to the merits of a case." *Ctr. for Auto Safety*, 809 F.3d at 1101. Merely noting that a document was designated confidential by a party will not satisfy any applicable legal standard for sealing.

Where a party seeks to seal only certain portions of a given document, the

unredacted version of the document, which should be lodged under seal pursuant to Local Rule 5.6(c), must include highlighting to indicate which portions of the document the party seeks to redact.

### Emergencies and Expedited Consideration

Any party desiring expedited consideration of a motion or other matter pending before the court may make such a request by filing a separate *Notice for Expedited Consideration* accompanied by a certificate from counsel for the moving party or, if unrepresented, the moving party. The certificate must set forth the following: 1) the facts establishing the need for expedited resolution; 2) the dates of the imminent events pertinent to the request; 3) whether the motion or request for expedited consideration could have been filed earlier; and 4) when or how the moving party will provide notice to all other parties and the other parties' positions on the motion. A request for expedited consideration that is simply mentioned in the caption/title of the related filing will not be considered—a separate notice and certificate must be filed.

### Requests to Reschedule Court Dates

The court interprets Local Rule 7.3(b) as applying to requests to reschedule court dates due to attorney conflicts. As such, and to enable the court to efficiently manage cases, such requests must be made by motion or stipulation, must indicate the position of each other party, and (unless another party plans to file a written opposition, which would be appropriate only in rare circumstances) must propose to the court at least three dates/times when all counsel are available for rescheduling purposes.

### Noncompliance

The parties are specifically advised that failure to prosecute, to comply with court orders, or to comply with the Local and Federal Rules may result in dismissal of all or part of this case, default, imposition of sanctions, or summary disposition of matters pending before the court. *See also* Local Rule 7.2(i) ("If a motion does not conform in all substantial respects with the requirements of [the Local Rules], or if the [opposing party] does not serve and file the required answering memoranda, . . . such noncompliance may be deemed

a consent to the denial or granting of the motion and the court may dispose of the motion summarily.").

**IT IS FURTHER ORDERED:**

1. That plaintiff(s) must promptly serve a copy of this order on defendant(s) who have not appeared and file a notice of service with the Clerk of Court;

2. That, unless the court orders otherwise, on **November 25, 2025** the Clerk of Court shall **terminate** without further notice any defendant in the United States that has not been served pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

Dated this 15th day of October, 2025.

Honorable Krissa M. Lanham
United States District Judge